STATE OF NEBRASKA, APPELLEE, V. ROBERT EARL RIVERS, APPELLANT.

411 N.W.2d 350

Filed August 28, 1987. No. 86-1080.

E. Michael Slattery of Case, Reinsch & Slattery, P.C., for appellant.

Robert M. Spire, Attorney General, and Steven J. Moeller, for appellee.

Boslaugh, White, Hastings, Caporale, Shanahan, and Grant, JJ., and Colwell, D.J., Retired.

Colwell, D.J., Retired.

This is a postconviction proceeding under Neb. Rev. Stat. §§ 29-3001 et seq. (Reissue 1985). Defendant, Robert Earl Rivers, appeals an order denying him an evidentiary hearing and postconviction relief, claiming an evidentiary hearing was required upon his motion that contained factual allegations which, if proved, constituted a violation or infringement of constitutional rights, and citing *State v. Malek*, 219 Neb. 680, 365 N.W.2d 475 (1985).

We note that a further statement of the *Malek* rule includes: "When a motion for postconviction relief and the files and records show that a defendant is not entitled to relief, no evidentiary hearing is required." *State v. Bean*, 224 Neb. 278, 280, 398 N.W.2d 104, 107 (1986). Such files and records include the presentence report. *State v. Waterman*, 215 Neb. 768, 340 N.W.2d 438 (1983).

On December 29, 1983, Rivers entered a plea of guilty to one count of first degree sexual assault, Neb. Rev. Stat. § 28-319(1)(c) (Reissue 1985), the victim being under 16 years of age. On August 23, 1984, a sentence of not less than 5 and not more than 9 years was imposed, to be served in the Nebraska Penal and Correctional Complex. There was no direct appeal. Rivers was represented by attorney Oliver Pollak, of Omaha, Nebraska. We affirm.

On July 16, 1983, defendant Rivers, age 35 years, was residing at a trailer court in Eagle, Cass County, Nebraska, with his wife, Janette, and her two daughters, Marjie, age 15 years, and Cheri, age 13 years. About 8 p.m., Rivers suggested to Marjie that they go out to the edge of town, and Marjie agreed. She rode her moped, and Rivers followed in his car. They went to a secluded place under a mulberry tree, where Marjie voluntarily removed her clothing and Rivers had anal intercourse with her. Marjie returned to the family home, where she showered and changed clothing. Soon, Janette became suspicious, and after some questioning, Marjie admitted the assault. Janette telephoned the State Patrol; Officer B.L.

Hobbs responded, and later placed Rivers under arrest. Both Marjie and Rivers had berry stains on their person. When first interviewed, Rivers denied the assault, but admitted being at the assault scene with Marjie and took the officer there. He explained the berry stains resulted from their falling down. The next day, still denying the July 16 assault, Rivers told officers that he had had prior anal intercourse with Marjie in the last 2 or 3 years. Marjie later confirmed this to an officer by saying that there had been several acts, the last being in October 1982.

Prior to accepting Rivers' guilty plea, the trial judge conducted an extensive allocution with Rivers, in full compliance with *State v. Tweedy*, 209 Neb. 649, 309 N.W.2d 94 (1981), and *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (1986).

At the time of sentencing, the trial judge reviewed a lengthy presentence report prepared by a state probation officer that included (1) Rivers' criminal record, beginning in 1965, showing more than 35 arrests, mostly alcohol-related, and two prior felony convictions, (2) copies of interviews and signed statements of Rivers, his wife, Janette, and his stepdaughter, Marjie, (3) numerous letters and copies of letters between Rivers and his former wife, Janette (their divorce became final in August 1983), showing a continued family bond between them and hope for reconciliation, and (4) an August 3, 1983, report from the Nebraska State Patrol laboratory that semen was identified in the anal specimens taken from Marjie.

On June 3, 1986, while still confined, Rivers filed a motion to vacate judgment. The court appointed E. Michael Slattery, attorney, of Plattsmouth, Nebraska, as counsel for Rivers. On September 16, 1986, Rivers filed a verified amended motion to vacate judgment, alleging numerous errors that we summarize as follows: (1) *ineffective counsel*, because Pollak did not advise Rivers of his defenses; particularly, that his conviction required corroboration of the victim's statement and proof of her age; that Pollak promised Rivers that he would be confined in the regional center and instructed Rivers to respond negatively when the judge asked him about possible threats and promises that induced his guilty plea; that there was animosity between Pollak and Rivers, shown when Pollak implied to the judge that Rivers was lying; and that Pollak had a conflict of interest in

offering to perform counseling between Rivers and Janette, while she was a potential witness; (2) *insufficient factual basis* to support the guilty plea; (3) *involuntary guilty plea*; and (4) *abuse of discretion* by the trial judge in the imposition of sentence.

A motion for postconviction relief may not be used to obtain review of issues which could have been raised on direct appeal. *State v. Evans*, 224 Neb. 64, 395 N.W.2d 563 (1986).

"A defendant seeking post conviction relief has the burden of establishing a basis for such relief, and the findings of the district court in denying relief will not be disturbed on appeal unless they are clearly erroneous." (Syllabus of the court.) *State v. Moore*, 217 Neb. 609, 350 N.W.2d 14 (1984).

The evidentiary hearing provided in § 29-3001 is a vehicle for a confined defendant to meet his or her burden of proof, and "although an evidentiary hearing is not always necessary on an application for post conviction relief, 'such a hearing is usually advisable to avoid protracted litigation.' " *State v. Waterman*, 215 Neb. 768, 774, 340 N.W.2d 438, 442 (1983). "A voluntary guilty plea waives every defense to the charge, whether the defense is procedural, statutory, or constitutional." *State v. Paulson*, 211 Neb. 711, 714, 320 N.W.2d 115, 117 (1982).

Pursuant to a court order, argument was had October 10, 1986, on the sole issue of whether or not an evidentiary hearing should be provided; no evidence was presented. On October 20, 1986, the judge made written findings, including:

> [T]he defendant was ably represented by his counsel at the time of the entry of the plea and prior thereto; that he has failed to show the ineffectiveness of counsel either in the records or the presentence report or that the items complained of could not have been used to secure the review of an issue on direct appeal.

Thereafter, he denied both an evidentiary hearing and the motion for postconviction relief, citing *State v. Birge*, 223 Neb. 761, 763, 393 N.W.2d 713, 714-15 (1986):

> This court has adopted a two-part test to determine whether a defendant received effective counsel: first, the attorney must perform at least as well as an attorney in that area with ordinary skill in criminal law, and second,

the attorney must conscientiously protect the client's interests. . . . Additionally, the defendant must show that in the absence of the attorney's error the result of the case would have been different.

Although we believe it made no difference in this case, the correct rule is that the defendant must show that *there is a reasonable probability* that but for counsel's error the result of the case would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

One general error is assigned for review: "The Court erred in not allowing Appellant to proceed with an evidentiary hearing in support of his Motion to Vacate." We review by referring to the summarized allegations in the motion.

*Ineffective counsel*: There is no merit to Rivers' claim that Pollak did not explain his possible defenses. The record shows the victim had been living in his household for more than 10 years; Rivers had admitted to investigating officers that the victim was 15 years old; his plea of guilty was an admission; corroboration was clearly available and known to Rivers in the testimony of Janette, to whom Marjie promptly described the assault; the presence of like berry stains on the person of Rivers and the victim; Rivers led the officers to the assault scene; the positive laboratory report finding semen in the victim's anal cavity; and, finally, this record:

THE COURT: Did your attorney fully explain the charges in the Information to you?

THE DEFENDANT: Yes.

THE COURT: And did you discuss all available defenses that you might have?

THE DEFENDANT: Yes.

THE COURT: Did you withhold anything from him?

THE DEFENDANT: Not that I know of.

THE COURT: Well, you give him all the information that you have?

THE DEFENDANT: Yes.

THE COURT: Are there any defenses that you think you might have that you haven't talked over with him?

THE DEFENDANT: No, sir.

THE COURT: Are you satisfied with the job that your

attorney has done for you?

THE DEFENDANT: Yes.

THE COURT: Do you feel he's competent?

THE DEFENDANT: Yes.

The record shows a searching court inquiry, *State v. Busse*, 186 Neb. 99, 181 N.W.2d 124 (1970), confirming that there were no promises or inducements made to Rivers:

THE COURT: Has anyone connected with law enforcement or anyone else made any threat, direct or indirect, used any force or held out any promises to get you to waive or not have any of these rights that we've been discussing?

THE DEFENDANT: No.

THE COURT: You say they have not?

THE DEFENDANT: They haven't.

THE COURT: And are you waiving these rights that we've been discussing freely and voluntarily then?

THE DEFENDANT: Yes.

. . . .

THE COURT: Are you pleading guilty then solely and only because of the fact that you did in fact do the things which are charged in the Information?

THE DEFENDANT: Yes.

The claim of animosity between Rivers and Pollak refers to the following exchanges during sentencing:

THE COURT: Is there anything that your attorney didn't bring out that you would like to relate to the Court before sentence is imposed here, Robert?

THE DEFENDANT: Just that I know I'm charged in Lancaster County, but those charges are not good.

THE COURT: You're not aware of what they are, you say? Have you been arraigned up there?

THE DEFENDANT: No.

THE COURT: Are you aware of what they are?

MR. POLLAK: He's aware of what they are. He's denying the truth.

THE DEFENDANT: I've been honest with everything that has happened but these are not honest charges over there.

Included in the presentence investigation report is a letter from the probation officer to Judge Case: "A warrant was issued for the above defendant on July 13, 1984 through the Lancaster County Court. . . . Mr. Rivers is accused of sexually assaulting a child. This event occurred sometime between May 1, 1984 and May 31, 1984."

Rivers initiated this line of inquiry apparently to advise the judge that the charges were unfounded. The judge's inquiry was limited to whether Rivers was aware that the charges were pending. Pollak's statement that Rivers was aware of the charges but that Rivers claimed they were not true was both responsible and proper under those circumstances.

Rivers claims that Pollak had a conflict since he offered to act as a counselor to reunite Rivers and his former wife, Janette, a potential witness against Rivers. The presentence report shows numerous letters between Rivers and Janette, all showing mutual continued love and affection, and that they attended counseling services together with no direct reference to participation by Pollak. The report does contain a letter from Pollak to the probation officer, enclosing a letter from Janette dated June 13, 1984, requesting leniency in sentencing, where Pollak says in his cover letter: "It appears from the letter that they are considering re-uniting and down the road bringing the family all back together. I hope you can take this into account in your pre-sentence investigation." There is no showing of either a conflict of interest or detriment to Rivers. See *State v. Williams*, 224 Neb. 114, 396 N.W.2d 114 (1986).

There was no error in the findings of the trial judge and the order denying Rivers' claims of ineffective counsel.

*Insufficient factual basis, involuntary guilty plea* (*State v. Terrell*, 220 Neb. 137, 368 N.W.2d 499 (1985)), and *abuse of discretion in sentencing*: These remaining claimed errors could have been raised on direct appeal; however, in view of the absence of an evidentiary hearing, we briefly address them.

The record abounds in factual bases, as shown by the presentence report, the statement of the county attorney made in open court, and Rivers' voluntary guilty plea. *State v. Bargen*, 219 Neb. 416, 363 N.W.2d 393 (1985).

The claimed involuntary plea resulting from the promises

and inducements was heretofore discussed and shown to be unfounded.

Defendant's guilty plea was affirmatively shown to have been understandingly and voluntarily made, with an intelligent choice of alternative choices open to him. *State v. Richter*, 220 Neb. 551, 371 N.W.2d 125 (1985).

The claimed abuse of discretion relates to sentencing, when the judge stated that he considered the information that there was an outstanding warrant for the arrest of Rivers from Lancaster County on a charge of sexual assault on a child. A sentencing judge has wide discretion in sentencing to consider presentence reports, police reports, affidavits, arrest records, personal observations, and other relevant information. See *State v. Rose*, 183 Neb. 809, 164 N.W.2d 646 (1969). There was no abuse of discretion shown.

From a review of the motion, files, and records, they affirmatively show that Rivers was not entitled to an evidentiary hearing, and there was no error in dismissing the amended motion.

AFFIRMED.