STATE OF NEBRASKA, APPELLEE, V. DANIEL J. START, APPELLANT.
427 N.W.2d 800

Filed August 19, 1988.   No. 87-992.

Daniel J. Start, pro se.

Robert M. Spire, Attorney General, and William L. Howland for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

In a postconviction proceeding pursuant to the Nebraska Postconviction Act, Neb. Rev. Stat. §§ 29-3001 et seq. (Reissue 1985), Daniel J. Start appeals from the judgment of the district court for Douglas County, which, after reviewing the files and records in Start's case, refused to grant an evidentiary hearing on Start's motion and denied postconviction relief concerning unappealed sentences imposed in 1982. As best we can, we extract the facts from Start's pro se motion for postconviction relief.

During 1982, in Douglas County, Nebraska, Start was sentenced on two felony charges, viz, theft by receipt of stolen property and unlawful flight to avoid arrest. For the theft conviction, Start was sentenced to a term of 2 to 4 years, and for a term of 1 to 2 years on the unlawful flight conviction. Start's sentences ran consecutively for a combined term of 3 to 6 years. After Start had served approximately 2 years 4 months for those convictions, he escaped in June of 1984 while on a work release, leaving the remainder of his combined sentences unserved.

In August 1984, Start was arrested in Douglas County, Colorado, and on September 10, 1984, was sentenced in Colorado to imprisonment for 4 years as the result of his conviction for "criminal impersonation." This sentence was to be served concurrently with the Nebraska sentences in 1982 for theft and unlawful flight. However, while Start was in custody to answer another Colorado charge (auto theft), he escaped. After capture, Start was convicted and sentenced in Colorado

to 8 years on the auto theft charge. Also on March 1, 1985, Start was convicted and sentenced to 8 years for his escape after conviction for criminal impersonation and was also sentenced to 4 years on conviction of an assault charge, apparently related to his Colorado escape. The sentences for the Colorado escape and assault were concurrent and were also concurrent with the sentence for auto theft, but without any reference to the 4-year sentence for the Colorado conviction for criminal impersonation or the two Nebraska convictions in 1982. On May 1, 1985, while Start was serving his sentences at the Colorado penitentiary in Canon City, authorities from Nebraska picked up Start and returned him directly to Douglas County, Nebraska, for trial regarding the 1984 escape.

After conviction for the Nebraska escape, Start was sentenced on July 29, 1985, to imprisonment for 2 years, which ran concurrently with "any other sentences presently being served." Nothing indicates that, after his return from Colorado and before his sentence for the Nebraska escape conviction, Start resumed serving the remainder of his theft-unlawful flight sentences being served when he escaped in 1984. As the result of the sentence for escape, Start was taken to the Nebraska Penal and Correctional Complex and, about 10 days later, was delivered in Lincoln to Colorado authorities for return to Canon City to complete serving the three Colorado sentences. After resumption of Start's imprisonment in Colorado for the sentences on the auto theft, escape, and assault convictions, Nebraska placed a detainer on Start, claiming, according to Start, "that the two years from Nebraska for escape was running with the Colorado sentence but the remainder of [Start's] Nebraska sentence was on hold until the Colorado sentences were [completed] then he was to be returned to Nebraska to serve the unserved portion of his sentence." Following the Nebraska detainer, Start filed his motion in the district court for Douglas County, Nebraska, requesting that the court "vacate the remainder of [his] Nebraska sentence, since Nebraska has lost all jurisdiction over [him], and issue an order to remove the detainer placed by Nebraska with the Colorado officials . . . [i]n the interest of justice . . . ."

In a proceeding under the Nebraska Postconviction Act, the

movant, in custody under sentence, must allege facts which, if proved, constitute a denial or violation of the movant's rights under the Nebraska or federal Constitution, causing the judgment against the movant to be void or voidable. *State v. Jackson*, 226 Neb. 857, 415 N.W.2d 465 (1987); *State v. Malek*, 219 Neb. 680, 365 N.W.2d 475 (1985); *State v. Williams*, 218 Neb. 618, 358 N.W.2d 195 (1984); *State v. Turner*, 194 Neb. 252, 231 N.W.2d 345 (1975).

A court is not required to grant an evidentiary hearing on a motion for postconviction relief which alleges only conclusions of law or fact. *State v. Lytle*, 224 Neb. 486, 398 N.W.2d 705 (1987); *State v. Robinson*, 215 Neb. 449, 339 N.W.2d 76 (1983); *State v. Turner, supra*.

An evidentiary hearing is not required under the Nebraska Postconviction Act when (1) the motion for postconviction relief does not contain sufficient factual allegations concerning a denial or violation of constitutional rights affecting the judgment against the movant, or (2) notwithstanding proper pleading of facts in a motion for postconviction relief, the files and records in the movant's case do not show a denial or violation of the movant's constitutional rights causing the judgment against the movant to be void or voidable. *State v. Propst*, 228 Neb. 722, 424 N.W.2d 136 (1988); *State v. Petitte*, 228 Neb. 144, 421 N.W.2d 460 (1988); *State v. Rivers*, 226 Neb. 353, 411 N.W.2d 350 (1987); *State v. Lytle, supra*; *State v. Turner, supra*.

Start's motion, insofar as it relates to a claim for postconviction relief, does not contain allegations of fact which, if proved, constitute a denial or violation of Start's constitutional rights under the Nebraska or federal Constitution. Start contends that the State of Nebraska has waived any right "to further claim on [Start] after being the First Sovereign Authority and relinquishing [its] custody back to Colorado." Brief for appellant at 5.

Under the circumstances factually alleged by Start, we believe and hold that when a defendant has been convicted of violating the laws of separate sovereigns, a defendant has no due process right to require that the sentence imposed by one sovereign must be served before the defendant serves the

sentence from the other sovereign. See *Barber v. Cooper*, 719 P.2d 1094 (Colo. 1986). Determination of priority in serving sentences imposed by different sovereigns is a matter of comity between the sovereigns, not a constitutional right of the prisoner. See, *Alire v. People*, 171 Colo. 228, 466 P.2d 78 (1970); *Crady v. Cranfill*, 371 S.W.2d 640 (Ky. 1963); *Hayward v. Looney*, 246 F.2d 56 (10th Cir. 1957). "The law of comity is such that the two sovereigns may decide between themselves which shall have custody of a convicted prisoner; however, the sovereign having prior jurisdiction need not waive its right to custody. *Joslin v. Moseley*, 420 F.2d 1204 (10th Cir. 1970) . . . ." *Hernandez v. United States Atty. Gen.*, 689 F.2d 915, 919 (10th Cir. 1982).

When separate sovereigns have jurisdiction over a person, the doctrine of primary jurisdiction allows the tribunal and sovereign which first obtained jurisdiction to continue jurisdiction until the first sovereign's jurisdiction is exhausted. See, *Merchant v. State*, 374 N.W.2d 245 (Iowa 1985); *In re Liberatore*, 574 F.2d 78 (2d Cir. 1978). The doctrine of primary jurisdiction is merely a means to resolve jurisdictional disputes between sovereigns and does not create a right for the person affected by a jurisdictional dispute between the sovereigns. *Merchant v. State, supra*; *McDonald v. Ciccone*, 409 F.2d 28 (8th Cir. 1969).

Start's motion does not allege in what manner the sequence of his serving the Colorado and Nebraska sentences will result in prejudice or unfairness to him. There is no jurisdictional dispute between Colorado and Nebraska; therefore, the doctrine of primary jurisdiction is inapplicable in Start's case. Since Start has no constitutional right which determines the priority of serving the sentences imposed, Start's allegation of waiver does not rise to the level of a constitutional question under the circumstances.

Start also requested that the district court quash the detainer issued by the State of Nebraska and, therefore, has sought relief which is unavailable under the Nebraska Postconviction Act.

Under the circumstances, Start's motion did not factually allege grounds for relief under the Nebraska Postconviction Act. The district court properly refused to grant Start an

evidentiary hearing. The judgment of the district court is affirmed.

AFFIRMED.